MR. JUSTICE LEE
delivered the opinion of the Court.
The defendants-appellants were convicted of third-degree criminal trespass in violation of section 18-4-504, C.R.S. 1973.
The validity of the conviction depends upon our determination of the following question: Did the defendants have a right under section 5 of Article XVI of the Constitution of Colorado to float and fish on a non-navigable natural stream as it flows through, across and within the boundaries of privately owned property without first obtaining the consent of the property owner? We answer this question in the negative and therefore affirm the conviction.
Trial was to the court. The evidence was not in dispute. The facts were stipulated. Some testimony was presented in explanation of the stipulated facts. The record shows that on July 3, 1976, the defendants entered the Colorado River from public land for a float-trip downstream. The Colorado River flows westerly and bisects the ranch of the Ritschard Cattle Company. As it passes through the Ritschard Ranch, it varies in depth from twelve inches to several feet. The rafts on which the defendants floated were designed to draw fivé to six inches of water, and had leg-holes through which the occupants could extend their legs into the water below the rafts. This enabled the defendants as they floated down the river to touch the bed of the river from time to time to control the rafts, avoid rocks and overhangs, and to stay in the main channel of the river. They touched the riverbed as it crossed the Ritschard ranch. The defendants did not, however, leave their rafts or encroach upon the shoreline or the banks of the river or islands owned by the Ritschard Cattle Company.
The defendants had not asked for nor received permission to float on the river through the Ritschard ranch, and the defendants Taylor and Wilson had previously been warned that they had no permission to float through the ranch.
Upon being notified that a party of floaters was approaching, Con Ritschard and his foreman extended a single strand of barbed wire across the river at the location of the Ritschard private bridge. The strand of barbed wire was from eight to ten inches above the surface of the water and was placed in this position specifically to impede the defendants. Ritschard and his foreman remained on the bridge to tell defendants they *140 were trespassing on private property. Defendants Taylor and Wilson were stopped at the bridge and told they were trespassing. They denied this and floated their rafts under the barbed wire and remained under the bridge for a period of time until defendant Emmert, and others in the rafting party, caught up with them. Shortly, a deputy sheriff arrived and placed the defendants under arrest, and they were subsequently charged with third-degree criminal trespass.
The parties stipulated that the river is non-navigable and had not historically been used for commercial or trade purposes of any kind. Accord, Stockman v. Leddy, 55 Colo. 24, 129 P. 220 (1912). However, the river had been used in the past by recreational floaters using rafts, tubes, kayaks and flat-bottom boats, despite the express objection of the Ritschards. At the time of this incident, the river had been posted with no-trespassing signs.
Also, it was agreed that substantially all of the Ritschard ranch was deeded land with no exclusion of the bed of the river, and that the area where the defendants were stopped was such an area, with the land on both sides of the river owned by the Ritschard ranch.
I.
The third-degree criminal trespass statute, section 18-4-504, C.R.S. 1973, provides:
“A person commits the crime of third degree criminal trespass if he unlawfully enters or remains in or upon premises. Third degree criminal trespass is a class 1 petty offense.”
Defendants do not argue that they did not intentionally float on the river over the Ritschard ranch property without the owner’s consent. Their contention is that they did so lawfully as a matter of right under the authority of section 5, Article XVI of the Colorado Constitution. Thus, if the defendants’ interpretation is incorrect, it follows that they committed the offense of third-degree criminal trespass.
II.
It is the general rule of property law recognized in Colorado that the land underlying non-navigable streams is the subject of private ownership and is vested in the proprietors of the adjoining lands. More v. Johnson, 193 Colo. 489, 568 P.2d 437 (1977); Hartman v. Tresise, 36 Colo. 146, 84 P. 685 (1906); Hanlon v. Hobson, 24 Colo. 284, 51 P. 433 (1897). It is clear, therefore, that since the section of the Colorado River here involved is non-navigable the title to the stream bed is owned by the riparian landowner, the Ritschard Cattle Company. Defendants do not dispute the ownership by the Ritschard Cattle Company of the riverbed in question.
The common law rule holds that he who owns the surface of the ground has the exclusive right to everything which is above it (“cujus est solum, ejus est usque ad coelum”). This fundamental rule of property *141 law has been recognized not only judicially but also by our General Assembly when in 1937 it enacted what is now codified as section 41-1-107, C.R.S. 1973:
“The ownership of space above the lands and waters of this state is declared to be vested in the several owners of the surface beneath, subject to the right of flight of aircraft.”
Applying this rule, which was implicitly adopted by the court in Hartman, supra, the ownership of the bed of a non-navigable stream vests in the owner the exclusive right of control of everything above the stream bed, subject only to constitutional and statutory limitations, restrictions and regulations. Thus, in Hartman, supra, ownership of the stream bed was held to include the exclusive right of fishery in the waters flowing over it. It follows that whoever “breaks the close” — intrudes upon the space above the surface of the land — without the permission of the owner, whether it be for fishing or for other recreational purposes, such as floating, as in this case, commits a trespass. See Restatement (Second) of Torts § 159.
We have not been cited to any Colorado decisions interpreting constitutional or statutory provisions which may have modified the common law rule of property law upon which we predicate this decision. And we do not feel constrained to follow the trend away from the coupling of bed title with the right of public recreational use of surface waters as urged by defendants. We recognize the various rationales employed by courts to allow public recreational use of water overlying privately owned beds, i.e., (1) practical considerations employed in water rich states such as Florida, Minnesota and Washington; (2) a public easement in recreation as an incident of navigation; (3) the creation of a public trust based on usability, thereby establishing only a limited private usufructary right; and (4) state constitutional basis for state ownership. We consider the common law rule of more force and effect, especially given its longstanding recognition in this state. Sterling National Bank v. Francis, 78 Colo. 204, 240 P. 945 (1925). As noted in Smith v. People, 120 Colo. 39, 206 P.2d 826 (1949): “If a change in long established judicial precedent is desirable, it is a legislative and not a judicial function to make any needed change.” We specifically note that it is within the competence of the General Assembly to modify rules of common law within constitutional parameters.
III.
The defendants claim that section 5 of Article XVI of the Colorado Constitution establishes the public right to recreational use of all waters in the state. We do not agree with this interpretation. We note that Article XVI is entitled “Mining and Irrigation.” Section 5, under the heading “Irrigation,” reads:
*142 “The water of every natural stream, not heretofore appropriated, within the state of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, subject to appropriation as hereinafter provided.”
This provision of the Colorado Constitution, upon which the defendants so heavily rely, simply and firmly establishes the right of appropriation in this state. In this regard, we agree with the decision in Hartman, supra, where this court rejected an argument similar to defendants’ here, that a person had a right under section 5 of Article XVI to fish in a non-navigable stream bounded by private property without the consent of the owner. In ejecting this contention, the court stated:
“. . . The section of the constitution relied upon declares the unappropriated waters of our natural streams to be the property of the public, and dedicates the same to the use of the people of the state, subject to appropriation, as in that instrument provided; and the following section provides that the right to divert the same to beneficial uses shall never be denied. It is this right of appropriation which the general government has recognized and confirmed, and subject to which its grants of public lands in the arid states since 1866 have been made. . . .”
The defendants attempt to distinguish Hartman, supra, on the grounds that the main thrust of the decision was to hold unconstitutional, as taking of private property without just compensation, that part of Colo. Sess. Laws, 1903, ch. 112, section 7 at 233, which provided: “That the public shall have the right to fish in any stream in this state, stocked at public expense, subject to actions in trespass for any damage done property along the bank of any such stream.” The defendants fail to recognize, however, that their misplaced reliance on the constitutional provision was squarely rejected by the language of Hartman, supra. We here reaffirm, therefore, that section 5, Article XVI of the Colorado Constitution was primarily intended to preserve the historical appropriation system of water rights upon which the irrigation economy in Colorado was founded, rather than to assure public access to waters for purposes other than appropriation.
Defendants also urge as a better resolution of this controversy that we follow the Wyoming decision in Day v. Armstrong, 362 P.2d 137 (Wyo. 1961). We decline to do so. There, under similar facts to those presented in this case, the Wyoming supreme court declared that the public has the right to the recreational use of the surface waters of non-navigable streams bounded by private property.
This conclusion, the Wyoming court declared, was “based solely upon Wyoming’s Constitutional declaration that all waters within its boundaries belong to the State . . ,”[1] Significantly, unlike Colorado’s counterpart con *143 stitutional provision, the Wyoming provision does not mention appropriation. As such, it has been regarded as a stronger statement of the public’s right to recreational use of all surface waters. See Sax, Water Law. 354 (1965).[2]
The interest at issue here, a riparian[3] bed owner’s exclusive use of water overlying his land, is distinguished from the right of appropriation. Constitutional provisions historically concerned with appropriation, therefore, should not be applied to subvert a riparian bed owner’s common law right to the exclusive surface use of waters bounded by his lands. Without permission, the public cannot use such waters for recreation. Accord, St. Louis Iron Mountain & Southern Railway, 53 Ark. 314, 13 S.W. 931 (1890); Herrin v. Sutherland, 74 Mont. 587, 241 P. 328 (1925); Monroe v. State, 111 Utah 1, 175 P.2d 759 (1946); Griffith v. Holman, 23 Wash. 347, 63 P. 239 (1900). If the increasing demand for recreational space on the waters of this state is to be accommodated, the legislative process is the proper method to achieve this end.
We find support for our conclusion in various legislative enactments which evidence a posture by the General Assembly that the waters of this state are not unrestrictedly open to the public. Section 33-1-112(g), C.R.S. 1973, gives the wildlife commission the power to:
“Enter into agreements with landowners for public hunting and fishing areas. Such agreements shall be negotiated by the commission or its authorized agent and shall provide that if the landowner opens the land under his control to public hunting and fishing, the commission shall reimburse him in an amount to be determined by the parties to the agreement. Under the agreement the commission shall control public access to the land to prevent undue damage to the land. In no event shall the commission be liable for damages caused by the public other than those specified in the agreement.”
Implicit in this section is the legislative recognition of the right of the landowner to close to public access the streams overlying his lands.
*144 Likewise, Article 41 of Title 33 limits the liability of an owner of “land” (which by statutory definition includes watercourses, section 33-41-102(2), C.R.S. 1973) who allows use of his streams by the public. Section 33-41-101 reads:
“The purpose of this article is to encourage owners of land within rural areas to make land and water areas available for recreational purposes by limiting their liability toward persons entering thereon for such purposes.”
Again, implicit in this section is the legislative recognition of the right of the landowner to close to public access the streams overlying his lands.
Further legislative support for the riparian landowner’s exclusive right to use of waters overlying his land is section 33-6-123(1), C.R.S. 1973:
“It is unlawful for any person to enter upon the privately owned land of any other person, firm, or corporation to hunt or fish without first obtaining permission from the owner or person in charge. A violation of the provisions of this section is a misdemeanor and, upon conviction thereof, shall be punished as provided in section 33-6-127.”
Finally, we note that in 1977, after the incident here in controversy had occurred, the legislature clarified the meaning of the word “premises” by the enactment of section 18-4-504.5, which provides:
“As used in sections 18-4-503 and 18-4-504, ‘premises’ means real property, buildings, and other improvements thereon, and the stream banks and beds of any non-navigable fresh water streams flowing through such real property.”
We hold that the public has no right to the use of waters overlying private lands for recreational purposes without the consent of the owner.
Accordingly, the judgment is affirmed.
JUSTICE GROVES and JUSTICE CARRIGAN dissent.

 Article 8 of the Wyoming constitution is entitled “Irrigation and Water Rights.” Section 1 thereof, entitled “Water is state property,” reads: “The water of all natural streams, springs, lakes or other collections of still water, within the boundaries of the state, are hereby declared to be the property of the state.”

 A possible explanation for the Wyoming supreme court’s result is that the allocation and use of water in Wyoming is centrally controlled by the state through an administrative permit system whereby a permit may be denied if determined to be detrimental to the public welfare. This approach contrasts Colorado’s minimal state control over appropriation of water. See Colo. Const. Art. XVI, Sec. 6, which provides that “the right to divert the unappropriated waters of any natural stream by beneficial uses shall never be denied.”

 We are not here concerned with littoral bed owner’s rights which present another set of practical considerations. As stated in Snively v. Jaber, 48 Wash. 2d 815, 296 P.2d 1015 (1956): “What practical value would the vested rights to boat, swim, fish, and bathe, have to any riparian owner if such rights were restricted to his fenced-in pie-shaped portion of the lake?”